**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES POLO ASSOCIATION, INC. | |
| Petitioner, | |
| v. | CASE NO: <u>1:23-cv-10818(MKV)</u> |
| RIVERS WORLD LLC, | |
| Registrant. | |

**<u>PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS</u>**

## <u>TABLE OF CONTENTS</u>

Page

I. **THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT.** ...................2

    *A. The Facts.* ..................................................................................................................3

    *B. This Court Has General Personal Jurisdiction Over Defendant* .................................5

    *C. This Court Has Specific Personal Jurisdiction Over Defendant.* ................................6

    *D. The Exercise of Personal Jurisdiction Comports With The Due Process Clause of the United States Constitution.* ..........................................................................................7

II. **DEFENDANT CANNOT RELY UPON THE SAUDI LAWSUITS, WHICH ACTUALLY FAVOR USPA.** ...........................................................................................8

    *A. The Court Should Not Grant Comity to the Saudi Lawsuit* .......................................8

    *B. The Issues Are Not Identical and Were Not Actually Litigated and Decided in the Prior Proceeding* .........................................................................................................9

    *C. Defendant Conceals and Ignores the Facts – USPA Prevailed in KSA* ....................11

III. **USPA HAS SUFFICIENTLY PLED COUNT III** ...............................................12

    *A. 15 U.S.C. § 1125(c)(6) Is Inapplicable.* ...................................................................12

    *B. USPA Has Sufficiently Alleged Its Marks Are Famous* .............................................14

IV. **CONCLUSION** ..........................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aero AG Holdings, LLC v. Huggoes Fashion LLC*,
    2022 U.S. Dist. LEXIS 119089 (S.D.N.Y. July 5, 2022) ........................................16

*Chanel Inc. v. Shiver and Duke LLC*,
    2022 WL 3868113 (S.D.N.Y. Aug. 30, 2022) ..................................................3, 7

*China Shipping Container Lines Co. Ltd. v. Big Port Serv. DMCC*,
    No. 15 Civ. 2006 (AT), 2019 WEL 9362547 (S.D.N.Y. Jan. 15, 2019) ..................8

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
    722 F.3d 81 (2d Cir. 2013) ....................................................................................3

*Eades v. Kennedy, PC Law Offices*,
    799 F.3d 161 (2d Cir. 2015) ..................................................................................6

*F.T. Mar. Servs. Ltd. v. Lambda Shipholding Ltd.*,
    533 F. Supp. 3d 149 (S.D.N.Y. 201) .....................................................................8

*Global Brand Holdings, LLC v. Church & Dwight Co., Inc.*,
    17 Civ. 6571 (KBF), 2017 WL 6515419 (S.D.N.Y. Dec. 19, 2017) ...............13, 16

*Heller Inc. v. Design Within Reach, Inc.*,
    9 Civ. 1909 (JGK), 2009 WL 2486054 (S.D.N.Y. Aug. 14, 2009) .......................16

*Penachio v. Benedict*,
    461 F. App'x 4 (2d Cir. 2012) ...............................................................................3

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*,
    588 F.3d 97 (2d Cir. 2009) ..................................................................................14

*Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*,
    825 F.2d 709 (2d Cir. 1987) ..................................................................................9

*Yukos Cap. S.A.R.L. v. OAO Samaraneftegaz*,
    963 F. Supp. 2d 289 (S.D.N.Y. 2013) ..............................................................10, 11

**Statutes**

15 U.S.C. § 1125(c)(2)(A) ...........................................................................................14

15 U.S.C. § 1125(c)(6) ..........................................................................................13, 14

15 U.S.C. § 1125(c)(6)(A) ..........................................................................................13

15 U.S.C. § 1125(c)(6)(B) ......................................................................................................13

N.Y. Gen. Bus Law § 360-I ....................................................................................................14

**Other Authorities**

37 C.F.R. § 2.2(o) ....................................................................................................................4

37 C.F.R. § 2.189 .....................................................................................................................4

37 C.F.R. § 2.193(e) ................................................................................................................5

84 F.R. 31498 ...........................................................................................................................5

C.P.L.R. § 301 ..........................................................................................................................3

C.P.L.R. § 302 ..........................................................................................................................2

C.P.L.R. § 302(a) ......................................................................................................................6

Fed. R. Civ. P. 12(b)(2) .......................................................................................................3, 8

Fed. R. Civ. P. 12(b)(6) .....................................................................................................1, 12

Rule 4 ........................................................................................................................................1

S.D.N.Y. L.R. 6.1 .....................................................................................................................1

S.D.N.Y. L.R. 7.1 .....................................................................................................................1

#520588166_v3

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

Plaintiff, United States Polo Association, Inc. ("USPA"), through counsel and pursuant to Fed. R. Civ. P. 12(b)(6), S.D.N.Y. L.R. 6.1 and 7.1, and this Court's Individual Rules of Practice in Civil Cases, Rule 4, hereby responds to Defendant, Rivers World LLC's ("Defendant") Motion to Dismiss the Amended Complaint (ECF No. 42) and related Memorandum of Law (ECF No. 43)(collectively, the "MTD").

This civil action is part of an ongoing, global dispute between the parties.  Defendant is a sham organization that fraudulently obtained a trademark registration for U.S. Registration Number 6,353,039 ("the '039 Mark") at the United States Patent and Trademark Office ("USPTO").  Defendant uses the '039 Mark to support allegations that it should be entitled to trademark protection in other countries, such as the Kingdom of Saudi Arabia ("KSA").  *See* ECF No. 30-2 at 4 ("…that its principal is practicing the activity of selling clothes in the Saudi markets under the trademark in question pursuant to a Franchise Agreement concluded between it and the American company RIVERS WORLD, which owns the trademark as the franchisor…the American company licensed its principal to use the trademark in question in Saudi Arabia…what proves that the American company, the owner of the trademark, practices its business in America and has points of sale…")(all caps in original).[1]  However, USPA has been largely successful in defeating Defendant's claims in other countries, including cancelling Defendant's marks in KSA and obtaining registration for USPA's marks in KSA.  Declaration of Daniel J. Barsky, Esq. in Support of Plaintiff's Response in Opposition to Motino to Dismiss ("Barsky Dec.") at ¶¶ 6-11. Defendant is now trying to further delay this civil action to prevent the cancellation of the '039

---

[1] USPA has inquired whether it is possible to obtain the documents utilized by Defendant's licensee in KSA to support the argument that Defendant "practices its business in America and has points of sale."  Unfortunately, court records in KSA are not publicly available as they are in the United States and therefore USPA will only be able to obtain these documents in discovery in the present civil action.

Mark by filing a motion to dismiss that replete with misstatements and half-truths.  Defendant makes three arguments: (1) this Court lacks personal jurisdiction over Defendant; (2) prior litigation in KSA should have preclusive effect in the United States; and (3) USPA's dilution claim is barred by federal statute and insufficiently pled.  The MTD fails on all three counts and should be denied.

## I.    This Court Has Personal Jurisdiction Over Defendant.

Ignoring the entirety of the allegations set forth in the Amended Complaint, Defendant argues that, with respect to personal jurisdiction, USPA makes "the same exact allegation…in its initial Complaint."  MTD at 5.  Defendant then proceeds to argue that there is no general personal jurisdiction over Defendant in this District.  *Id*.  Defendant relies upon USPA's filings when it was seeking a default judgment in this civil action because Defendant had failed to appear.  MTD at 5.  USPA's position was based upon a sworn declaration signed by Defendant's CEO (as detailed further hereinbelow).  ECF No. 16.  Because Defendant has now appeared and apparently either disavowed its prior declaration or alleged that circumstances have changed since its prior declaration, USPA informed the Court that personal jurisdiction would also be appropriate under C.P.L.R. § 302.  ECF No. 35 at 2.  Defendant willfully ignores this fact.

Defendant has also ignored entirely paragraph 7 of the Amended Complaint, which states, in part,

> Defendant committed the acts complained of in this Amended Complaint while it maintained its principal place of business at 17 State Street, Suite 4000, New York, New York 10004.  Defendant also represented to the public that it operated retail locations open to the consuming public and located in this District, including more than five retail locations in the New York metropolitan area.

Amd. Cmpl. at ¶ 7.[2]  USPA has alleged sufficient facts to establish specific personal jurisdiction over Defendant in the Southern District of New York.

"On a Rule 12(b)(2) motion, plaintiff carries the burden of demonstrating that personal jurisdiction exists, and where the district court did not conduct a full-blown evidentiary hearing on a motion, the plaintiff need make only a *prima facie* showing of jurisdiction." *Penachio v. Benedict*, 461 F. App'x 4, 5 (2d Cir. 2012).  "At the pleading stage, a plaintiff may make a *prima facia* showing by relying on its pleadings and affidavits, and a showing of personal jurisdiction may be established solely by allegations." *Chanel Inc. v. Shiver and Duke LLC*, 2022 WL 3868113 at *1, 21-cv-01277(MKV) (S.D.N.Y. Aug. 30, 2022)(citing *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84-85 (2d Cir. 2013)).  The court must construe the pleadings and affidavits in the light most favorable to plaintiff.  *Dorchester Fin.*, 722 F.3d at 85.

*A.    The Facts.*

Defendant protests that it "has no presence within New York state" and that it "is not present within New York with sufficient permanence and continuity to give [Defendant] a presence within New York for the purposes of CPLR 301."  MTD at 5-6.  The entirety of this argument appears to be based upon the self-serving Declaration of Osama Alrigi (ECF No. 30) and is nothing more than a denial of various allegations of the Amended Complaint, specifically paragraphs 7, 11, 31, 32, 49, and 57.

As alleged in the Amended Complaint, Defendant purported to operate numerous retail locations in this District.  Amd. Cmpl. at ¶¶ 7, 31.  This allegation alone, which must be taken as true, is sufficient to confer personal jurisdiction over the Defendant in this District.  The evidence will show that Defendant represented it maintained eight brick and mortar retail locations in New

---

[2] Defendant also ignores USPA's Letter to the Court of February 14, 2025 (ECF No. 35), wherein USPA specifically states that "[p]ersonal jurisdiction is appropriate under C.P.L.R. § 302."

York, New York and one in Yonkers, New York.  Barsky Dec. at ¶ 12.  Defendant has never disavowed this allegation, stating only that it does not *currently* conduct business in New York State.

Defendant's sworn statement that it "has not done any business in New York since vacating its New York office" (ECF No. 30 at ᴘ 7) – which occurred sometime prior to December 13, 2023 (though Defendant has refused to state precisely when it allegedly left New York) – is demonstrably false.  USPA recently discovered that, during the pendency of this civil action[3] Defendant launched a new, highly interactive internet shopping site directed towards the United States (the "New Infringing Website").  Barsky Dec. at ᴘ 3.  Indeed, the New Infringing Website utilizes a subdomain that is clearly targeted at the United States, specifically, "us.riversworld.net" (emphasis supplied).  *Id.*  The New Infringing Website is accessible in New York State and allows users to order products bearing the infringing mark to be delivered to New York State.  *Id.*  USPA was able to order products bearing the infringing mark to be delivered to its offices in New York, New York.  *Id.*

Moreover, Defendant must "provide and keep current the address of its domicile" with the USPTO.  37 C.F.R. § 2.189.  Pursuant to the USPTO Rules of Practice in Trademark Cases, "domicile" is defined as "the permanent legal place of residence of a natural person or the principal place of business of a juristic entity."  37 C.F.R. § 2.2(o).  The reason for this requirement is

> [t]he trademark register must accurately reflect marks that are actually in use in commerce in the U.S. for the goods/services identified in the registrations…The public relies on the register to determine whether a chosen mark is available for use or registration. When a person's search of the register discloses a potentially confusingly similar mark, that person may incur a variety of resulting costs and burdens, such as those associated with investigating the actual use of the disclosed mark to assess any

---

[3] The precise date is currently unknown but will be established during discovery.  Based on internet archives it appears that the date is sometime on or around August 18, 2024.

> conflict, initiating proceedings to cancel the registration or oppose the application of the disclosed mark, engaging in civil litigation to resolve a dispute over the mark, or choosing a different mark and changing business plans regarding its mark. In addition, such persons may incur costs and burdens unnecessarily if the disclosed registered mark is not actually in use in U.S. commerce, or is not in use in commerce in connection with all the goods/services identified in the registration. An accurate and reliable trademark register helps avoid such needless costs and burdens.

84 F.R. 31498.

When submitting an application for registration to the USPTO, an applicant must include a verified statement in support of the application, which must be signed by a person with legal authority to bind the owner or an attorney representing the applicant. 37 C.F.R. § 2.193(e). Defendant provided such a statement, signed by Osama Alrigi as Chief Executive Officer of Defendant, in association with registering the '039 Mark. Barsky Dec. at ¶ 14. Mr. Alrigi has filed a declaration in this civil action, stating that he is "an authorized representative of Defendant…" ECF No. 30 at ¶ 2. The address provided for Defendant by Mr. Alrigi in that sworn statement is 17 State Street, Suite 4000, New York, New York 10004. Barsky Dec. at ¶ 14. Despite knowing (at least because of this civil action) that the USPTO file for the '039 Mark lists the registrant and principal address for Defendant as 17 State Street, Suite 4000, New York, New York 1004, and despite the affirmative obligation to maintain a current address with the USPTO, Defendant has not taken any steps to update

B.    *This Court Has General Personal Jurisdiction Over Defendant.*

As set forth above, all of the acts set forth in the Amended Complaint occurred while Defendant was domiciled in New York. USPA brought this civil action in this District because Defendant filed a sworn declaration with the USPTO asserting that it was domiciled in this District. As set forth by the USPTO, one of the purposes of requiring a trademark applicant to disclose their location so that the public knows where it can "engag[e] in civil litigation to resolve a dispute over

5

the mark". 84 F.R. 31498. USPA relied upon Defendant's sworn statement and Defendant's obligation to maintain current domicile information with the USPTO. It is clear that Defendant's actions occurred in this District while Defendant was domiciled in this District. Defendant's self-serving, after the fact assertions do not alter those facts.

C.    *This Court Has Specific Personal Jurisdiction Over Defendant.*

Moreover, it is clear that, if the Court does not have general jurisdiction over Defendant by virtue of its alleged dissociation from New York State, the Court has specific personal jurisdiction over Defendant. CPLR § 302(a) extends personal jurisdiction over entities that "in person or through an agent…transacts any business within the state or contracts anywhere to supply goods or services in the state; or…commits a tortious act within the state…" To satisfy the requirements of a *prima facia* showing, a plaintiff must show that a defendant transacted business within New York State and that the asserted claim arises from that activity. *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015). There is no question that USPA has satisfied its pleading burden.

The Amended Complaint alleges three causes of action: Count I seeking cancellation of the '039 Mark for fraud upon the USPTO, Count II alleging trademark infringement, and Count III alleging trademark dilution. With respect to Count I – fraud upon the USPTO – there is no question that the entirety of the actions giving rise to the cause of action occurred within this District. Paragraphs 7 and 49 of the Amended Complaint allege that the application for the '039 Mark was filed by Defendant from New York and the '039 Mark file includes an affidavit from Defendant averring that Defendant's principal place of business was in New York, New York. Defendant does not (and cannot) deny this. Thus, the Court clearly has personal jurisdiction over Defendant with respect to Count I as the activity giving rise to that cause of action constitutes both transacting business (seeking the economic protections of a trademark registration at the USPTO) and committing a tort (fraud), all of which occurred within New York State. Defendant's own

6

affidavit, which is part of the file wrapper for the '039 Mark, confirms that the activity giving rise to Count I occurred in New York, New York.  The cause of action is directly tied to the actions that occurred within New York State.  USPA has sufficiently alleged specific personal jurisdiction over Defendant with respect to Count I.

USPA has also sufficiently alleged specific personal jurisdiction over Defendant with respect to Counts II (trademark infringement) and III (trademark dilution).  As set forth above, the Amended Complaint clearly states that Defendant allegedly operated retail storefronts in New York, New York (and Westchester County, New York) and that during the relevant time period, Defendant maintained a principal place of business in New York, New York.  Moreover, USPA has now discovered that, during the pendency of this civil action, Defendant has launched a highly interactive internet shopping website accessible in New York, New York that purports to ship products bearing the infringing '039 Mark to consumers in New York, New York.[4]  The offering for sale and actual sale of infringing goods into this District is sufficient to convey personal jurisdiction over a defendant.  *Chanel Inc.*, 2022 WL 3868113 at *2-3 (collecting cases).

D.    *The Exercise of Personal Jurisdiction Comports With The Due Process Clause of the United States Constitution*.

"To exercise personal jurisdiction over an out-of-state defendant, the Due Process Clause requires that the defendant have 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.''" *Chanel Inc.*, 2022 WL 3868113 at *3 (quoting *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945)).  Selling allegedly infringing products to customers in New York State through a website

---

[4] The New Infringing Website is not included in the Amended Complaint because it was discovered after the Amended Complaint was filed.  USPA should not be punished for Defendant's concealment of the New Infringing Website.  To the extent necessary, USPA requests the Court grant permission to file a Second Amended Complaint to incorporate the New Infringing Website.

constitutes purposeful availment for jurisdictional purposes. *Id.* (collecting cases). Here, there is no question that Defendant committed the acts complained of in New York State and while Defendant was domiciled in New York State. Defendant alleged movement of its business operations out of this District is irrelevant because the acts complained of occurred in this District while Defendant was domiciled in this District.

Moreover, it appears that, despite Defendant's protestations, Defendant continues to avail itself of the benefits of conducting business in this District as it appears to maintain a highly interactive internet shopping website accessible in New York, New York and which purports to sell and ship products bearing the infringing '039 Mark to consumers in New York, New York. Defendant's Fed. R. Civ. P. 12(b)(2) motion should be denied.

## II.     Defendant Cannot Rely Upon the Saudi Lawsuits, Which Actually Favor USPA.

Defendant once again argues that USPA should be collaterally estopped from bringing this civil action due to a lawsuit in KSA. In so doing, Defendant ignores the very caselaw it cites and conceals the facts from this Court. Defendant's actions are so egregious that the Court should consider exercising its inherent powers sanction Defendant and its counsel for continuing to advance arguments that are unquestionably unsupported by either fact or law.

### A.     The Court Should Not Grant Comity to the Saudi Lawsuit

Defendant cites to *F.T. Mar. Servs. Ltd. v. Lambda Shipholding Ltd.*, 533 F. Supp. 3d 149 (S.D.N.Y. 201) to support the proposition that comity should be granted to the Saudi Lawsuit. Even the most cursory reading of *F.T. Mar.* shows that it requires this Court to refuse Comity to the Saudi Lawsuit. As clearly set forth in *F.T. Mar.*, a Court can grant comity and recognize a foreign judgment only if it does not prejudice the rights of United States citizens. *Id.* at 155. In *F.T. Mar.* the parties were a Cypriot corporation and a Liberian company. *Id.* at 152. In other cases cited by *F.T. Mar.* the parties were a United Arab Emirates corporation (*China Shipping*

8

*Container Lines Co. Ltd. v. Big Port Serv. DMCC*, No. 15 Civ. 2006 (AT), 2019 WEL 9362547 (S.D.N.Y. Jan. 15, 2019)), a Panamanian and a Swedish corporation (*Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709 (2d Cir. 1987).

Here, both USPA and Defendant are citizens of the United States. Granting comity to and recognizing the Saudi Lawsuit would prejudice the rights of a United States citizen, specifically, USPA. Defendant's own caselaw defeats its argument; the Court can deny Defendant's motion on this ground alone and need not engage in any further analysis.

B.    *The Issues Are Not Identical and Were Not Actually Litigated and Decided in the Prior Proceeding*

Should the Court decide to grant comity to the Saudi Lawsuit and recognize the decision, the Court must still reject Defendant's arguments that there is issue preclusion between the parties as to the question of likelihood of confusion. As set forth by Defendant, for issue preclusion to apply, the first element that must be satisfied is that the issues of both proceedings must be identical. MTD at 8. Here, they are not and even a cursory review of the Saudi Lawsuit shows why.

Defendant argues that "[t]he mark at issue in the Saudi Lawsuit is the same mark at issue in this lawsuit." MTD at 9. This is not true; the marks at issue in the Saudi Lawsuit are different from those alleged in this civil action as shown by even a cursory reading of the Saudi Lawsuit, which states "Claimant does not have a registration for its trademark…on the clothing products subject to the violation falling under category No. (25)" and that "Claimant does not have a registration for its trademark on the clothing products subject to the complaint, which fall under category No. (25)." ECF No. 30-1 at 4. The Saudi Lawsuit goes on to state that "[t]he protection of the Claimant's trademark is limited to services under category No. (35) without extending that protection to include clothing products falling under category No. (25), due to the vast difference

9

between the Claimant's services and the products of the respondent…" *Id*.  Finally, the Saudi Lawsuit determined that the defendant therein (which is *not* the same as the Defendant in this civil action)[5] was not counterfeiting because it had received a license to use the marks from the Defendant in this civil action.  ECF No. 30-2 at 4.

Here, the Amended Complaint alleges multiple marks owned by USPA in Class 25, including U.S. Registrations 3,370,932; 3,598,829; and 3,729,640.  Amd. Cmpl. at ¶¶ 15, 16, and 21.  Unlike in the Saudi Lawsuit, USPA owns marks registered in Class 25 in the United States.[6] *Id*.  Moreover, this civil action does *not* include a cause of action for counterfeiting – only trademark infringement and dilution are alleged.  Therefore, the issues in the Saudi Lawsuit are materially different from the issues presented here and the first element of the test for collateral estoppel fails.  Moreover, Defendant's statement that "[t]he mark at issue in the Saudi Lawsuit is the same mark at issue in this lawsuit" is false – the marks at issue in this lawsuit are registered in Class 25, not Class 35.

Additionally, the second element of the test for collateral estoppel (that the relevant issues were actually litigated and decided in KSA (MTD at 8) likewise fails because the marks at issue in the Saudi Lawsuit were different from the marks at issue here for the same reasons set forth above.

Moreover, Defendant wrongly attempts to obtain collateral estoppel over legal conclusions rendered pursuant to foreign laws.  In *Yukos Cap. S.A.R.L. v. OAO Samaraneftegaz*, 963 F. Supp. 2d 289 (S.D.N.Y. 2013), which is cited by Defendant, the court found

> that there is an insufficient identity of issues to support collateral estoppel…Despite Samaraneftegaz's assurances that it does not

---

[5] The defendant in the Saudi Lawsuit is a licensee of the Defendant here.
[6] As will be discussed in greater detail below, USPA now owns trademarks in KSA registered in Class 25 because KSA courts have cancelled Defendant's marks in KSA for likelihood of confusion with USPA's marks and allowed USPA's marks to register in KSA.

#520588166_v3

> seek preclusive effect with respect to any legal conclusions, the
> Arbitrazh court's determinations were not strictly findings of fact.
> Rather, its decision that Samaraneftegaz did not "receive"
> notice…is based at least to some extent on its application of Russian
> law.  By contrast, this case is governed by a different legal
> standard…

963 F. Supp. 2d at 295.  Here, as in *Yukos Cap.*, Defendant is seeking to apply legal conclusions

(that there is no likelihood of confusion) rendered under foreign laws (Saudi Arabia's trademark

laws) to a United States company bringing a lawsuit under United States law.  Once again,

Defendant's own caselaw stands for a proposition that is the *opposite* of what Defendant argues to

this Court.  The Court should follow *Yukos Cap.* and refuse to grant any preclusive effect to the

Saudi Lawsuit.  The Motion should be denied.

C.    *Defendant Conceals and Ignores the Facts – USPA Prevailed in KSA*

The difference between United States and Saudi law is not a mere technical shield utilized

by USPA to maintain the pendency of this civil action – the material differences between KSA

trademark law and United States trademark law explain the outcome of the Saudi Lawsuit which,

as will be set forth in more detail below, is an outlier in the global dispute between USPA and

Defendant.  Unlike United States law (which recognizes the validity of unregistered marks a/k/a

common law marks), KSA law does *not* recognize unregistered marks.  Barsky Dec. at ¶ 15.  That

is why the Saudi Lawsuit focuses on the differences between goods and services between Classes

25 and 35 – without a registered mark (at the time) in Class 25, USPA could only rely upon its

registered mark in Class 35 and it is the differences between goods (Class 25) and services (Class

35) that result in the finding of no likelihood of confusion.

What Defendant fails to inform the Court of is the fact that, in *every other* trademark matter

between USPA and Defendant that has reached full and final determination in KSA,[7] Defendant

---

[7] Meaning all appeals have been exhausted and the highest court available in KSA has rendered a final decision.

has *lost*.  Defendant argues that USPA this civil action is USPA's seventh "bite at the apple." MTD at 11.  As set forth above, this is not true because the Saudi Lawsuit involves different marks and different laws.

Moreover, while Defendant argues that USPA has made six attempts "at establishing that Mark 039 is similar to [USPA]'s own marks" in KSA and that "[each] attempt has failed" (MTD at 11), what Defendant has intentionally failed to disclose to this Court is that those matters are decisions by intermediate courts, subject to appeal.  The final decisions in KSA paint a very different picture.  On appeal, KSA courts have reached final determinations that have resulted in the invalidation of Defendant's marks in KSA and registration of USPA's marks and a finding of a likelihood of confusion between USPA's goods and Defendant's goods.[8]  Barsky Dec. at ¶¶ 7-10.

USPA would like nothing more than for this Court to rely upon the relevant decisions of the KSA courts as they have all found a likelihood of confusion between the infringing '039 Mark and USPA's marks in favor of USPA in Class 25 (which is the subject of this civil action).  However, for the reasons set forth above, it is not legally proper to do so.  And for those same reasons, Defendant's Fed. R. Civ. P. 12(b)(6) motion should be denied.

## III.    USPA Has Sufficiently Pled Count III

Defendant again advances bad faith arguments in arguing that Count III of the Amended Complaint should be dismissed.

*A.    15 U.S.C. § 1125(c)(6) Is Inapplicable.*

Defendant again argues that registration of a mark on the Principal Register of the USPTO is a complete defense to a trademark dilution claim.

---

[8] Again, the Saudi Lawsuit is based on USPA's *services* versus the *goods* of a licensee of Defendant.

15 U.S.C. § 1125(c)(6) provides that "The ownership by a person of a valid registration …

on the principal register … shall be a ***complete bar*** to an action against that person, with respect

to that mark, that … seeks to prevent dilution by blurring …." (emphasis added). The Southern

MTD at 11.   Defendant creatively (and improperly) uses ellipsis to quote 15 U.S.C. §

1125(c)(6)(B) while skipping 15 U.S.C. § 1125(c)(6)(A).  The entire statute reads:

> The ownership by a person of a valid registration under the Act of
> March 3, 1881, or the Act of February 20, 1905, or on the principal
> register under this chapter shall be a complete bar to an action
> against that person, with respect to that mark, that –
>
> (A) is brough by another person *under the common law or a statute
> of a State*; *and*
>
> (B)(i) seeks to prevent dilution by blurring or dilution by
> tarnishment; or
>
> (ii) asserts any claim of actual or likely damage or harm to the
> distinctiveness or reputation of a mark, label, or form of
> advertisement.

15 U.S.C. § 1125(c)(6) (emphasis supplied).  As the Court can see, Defendant intentionally omitted

15 U.S.C. § 1125(c)(6)(A), which is read in the conjunctive (via the use of the word "and") with

15 U.S.C. § 1125(c)(6)(B).  Count III is not a state law claim.  Amd. Cmpl. ¶ 58.  It is therefore

not barred by 15 U.S.C. § 1125(c)(6).  Moreover, the case cited by Defendant to support its

argument, *Global Brand Holdings, LLC v. Church & Dwight Co., Inc.*, 17 Civ. 6571 (KBF), 2017

WL 6515419 (S.D.N.Y. Dec. 19, 2017), specifically states that it is considering FEDERAL

PREEMPTION OF STATE LAW DILUTION CLAIM.  *Global Brand Holdings,* 2017 WL

6515419 at *6 (all caps in original).

   In prior correspondence USPA has specifically advised the Court and Defendant that 15

U.S.C. § 1125(c)(6) is inapplicable.  ECF No. 35 at 2-3.  Defendant's intentional omission of a

key portion of that statute, and continued reliance thereon despite being put on notice that it is

inapplicable, is clearly bad faith and the Court should consider using its inherent powers to sanction Defendant and its counsel for the continued advancement of bad faith arguments unsupported by law or fact.  And, the Court should deny the Motion.

B.      *USPA Has Sufficiently Alleged Its Marks Are Famous*

Despite its prior argument (and in an apparent tacit acknowledgement of the bad faith nature of the argument) Defendant next argues that USPA has failed to plead that its marks are famous by citing to *federal* law.[9]  In determining whether a mark is famous the court must consider

> (i)The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.
>
> (ii)The amount, volume, and geographic extent of sales of goods or services offered under the mark.
>
> (iii)The extent of actual recognition of the mark.
>
> (iv)Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

15 U.S.C. § 1125(c)(2)(A).

The Amended Complaint contains the following allegations at the following paragraphs:

1. USPA is the largest voluntary sport organization in North America and that it uses its Marks for this purpose (¶¶ 1-2);

2. USPA is the fifth-largest global sports licensor and 38th largest global licensor overall (¶¶ 2, 59);

---

[9] Unlike federal dilution law, New York's state dilution law does not contain a famousness element.  *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 114 (2d Cir. 2009).  Thus, Defendant's argument that USPA failed to sufficiently plead the fame of its marks is either an admission that Count III sounds in federal law, rendering Defendant's argument that 15 U.S.C. § 1125(c)(6) bars this civil action a bad faith argument as 15 U.S.C. § 1125(c)(6) applies only to state law claims, or a bad faith argument on its own as USPA would not be required to plead fame under N.Y. Gen. Bus Law § 360-I.  Either way, Defendant continues to waste judicial resources by advancing bad faith arguments that are not founded in either law or fact.

#520588166_v3

3. USPA sells in over 180 countries and has more than 1,100 branded retail stores worldwide (¶¶ 2, 59);

4. USPA has been using its double pony mark since 1998 (¶ 14) and has been using that mark on clothing since as early as 2006 (¶ 15) and that its marks are registered (¶¶ 14, 15, 21);

5. since at least 1998, USPA has operated websites displaying its marks (¶¶ 17-18);

6. USPA has actively marketed and promoted its marks since at least 1998 (¶ 19);

7. USPA's marks are famous (¶¶ 23, 59); and

8. USPA's marks applied to goods generated nearly $2 billion in annual global sales (¶ 59). These allegations are more than sufficient to establish the fame of USPA's marks as they establish duration of use, extent of use, marketing, sales, global scope, consumer purchases, retail locations, and registration.

Turning to the underlying evidence, the fame of USPA's marks becomes even more clear. In 2024, USPA was the 23rd largest global mark licensor by revenue, accounting for $2.4 billion in worldwide sales. Barsky Dec. at ¶ 16. For context, that puts USPA just behind Whirlpool and ahead of brands such as Ford, Hershey, Dr. Seuss, Nissan, BMW, PGA Tour, Sesame Workshop, and Dr. Pepper. *Id.* That number increased to $2.5 billion in 2025. *Id.* Ranking in the top five sports licensing enterprises means USPA's marks on goods sold to consumers generate revenue that places USPA with the likes of the National Football League, Major League Baseball, and the National Basketball Association. USPA's marketing has been recognized globally, winning "Emerging Market Retailer of the Year" in 2024 and was a finalist for "Best Sports Licensed Brand" in that same year. *Id.* USPA's social media has over 10 million followers. *Id.*

However, all of the foregoing is unnecessary as USPA sufficiently alleged that its marks are famous. The cases cited by Defendant are distinguishable. In *Heller Inc. v. Design Within*

*Reach, Inc.*, 9 Civ. 1909 (JGK), 2009 WL 2486054 (S.D.N.Y. Aug. 14, 2009), the plaintiff alleged that, since 1998 (or about 11 years prior to the lawsuit), it had sold 180,000 chairs generating sales of over $9 million. *Heller*, 2009 WL 2486054 at *1. This was found to be an insufficient allegation of fame. *Id*. at *4. In *Global Brand Holdings,* the plaintiff only alleged that it had "invested millions of dollars" and "decades of time" in promoting its marks, without any specifics. *Global Brand Holdings*, 2017 WL 6515419 at *1. Meanwhile, in *Aero AG Holdings, LLC v. Huggoes Fashion LLC*, 2022 U.S. Dist. LEXIS 119089 (S.D.N.Y. July 5, 2022) involved a mark that sold $30 million in products between 1987 and 1990. All of these cases are a far cry from what is alleged in the Amended Complaint: billions of dollars in annual sales across 180 countries and 1,100 branded stores worldwide making USPA's marks the fifth largest licensed sports marks in the world and the 38th largest overall globally.

Despite the well-pled allegations of the Amended Complaint, including that the USPA marks are the fifth-most licensed sports marks and 38th most licensed marks globally, Defendant asks the Court to dismiss Count III with prejudice "because none of the trademarks that US Polo referenced in the Amended Complaint rise to the level of a 'household name' – such as Budweiser beer, Camel cigarettes, and Barbie Dolls…" MTD at 14. Yet, in 2024, USPA's marks were attached to retail sales that exceeded those of Ford, Hershey, Dr. Seuss, Nissan, BMW, PGA Tour, Sesame Workshop, and even Church & Dwight (the defendant in *Global Brand Holdings*). Barsky Dec. at ¶ 16. USPA's marks have clearly reached the level of fame attributed to Budweiser, Camel, and Barbie. The Motion should be denied or, if granted, the grant should be without prejudice to allow USPA to add further factual allegations regarding the fame of its marks.

## IV.    Conclusion

Defendant continues to advance spurious arguments in an attempt to further delay these proceedings. USPA has sufficiently alleged personal jurisdiction over Defendant – there is no

#520588166_v3

question that the actions complained of in the Amended Complaint were committed by Defendant in New York State while Defendant was domiciled in New York. Moreover, if the Court disagrees, USPA should be given an opportunity to amend its Amended Complaint with the new facts that were only discovered after the Motion was filed. Additionally, the Saudi Lawsuit should not be granted comity and should not be relied upon by the Court as it would prejudice a United States citizen, involves different issues, and USPA ultimately prevailed in KSA in having its marks registered, and Defendant's cancelled or rejected, because of a likelihood of confusion between USPA's marks and Defendant's marks. If anything the proceedings in KSA support USPA's Amended Complaint. Finally, Count III sounds in federal – not state – law and USPA has sufficiently pled that its marks are famous. For these reasons the Motion to Dismiss should be denied or, at a minimum, USPA should be permitted to amend its Amended Complaint with the newly discovered evidence.

## Certificate Regarding Word Count

Pursuant to S.D. N.Y. L.R. 7.1(c), I hereby certify that this Response does not exceed 8,750 words in length (excluding, caption, index, table of contents, table of authorities, signature blocks, and required certificates). Pursuant to Microsoft Word, the total number of words in this Response is 5,537. I further certify that this Response conforms with the Court's Individual Rules number 4(a)(iii).

      /s/ Daniel J. Barsky

Daniel J. Barsky, Esq.

**UNITED STATES POLO ASSOCIATION, INC.**

Date: April 30, 2025      By:  /s/Daniel J. Barsky

      DANIEL J. BARSKY, ESQ.

      Florida Bar No. 0025713

17

#520588166_v3

(admitted *pro hac vice*)
HOLLAND & KNIGHT LLP
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
Phone 305.789.7540
daniel.barsky@hklaw.com

*Attorney for USPA*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I submitted a true and correct copy of the foregoing via the Court's CM/ECF system, which caused a copy of the foregoing to be served upon all counsel of record this 30th day of April, 2025.

/s/ Daniel J. Barsky
Daniel J. Barsky, Esq.

18