USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/4/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES POLO ASSOCIATION, INC., | |
| Plaintiff, | |
| -against- | |
| RIVERS WORLD LLC, | |
| Defendant. | |

1:23-cv-10818 (MKV)

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

MARY KAY VYSKOCIL, United States District Judge:

This case concerns a dispute between Plaintiff United States Polo Association, Inc. ("Plaintiff" or "USPA") and Defendant Rivers World LLC ("Defendant" or "Rivers World") concerning Rivers World's allegedly fraudulently obtained trademark registration for U.S. Registration Number 6,353,039 (the "039 Mark"). The 039 Mark depicts two polo players riding horses wielding outstretched mallets above the words "RIVERS WORLD." USPA alleges that the 039 Mark infringes and dilutes its own various registered trademarks, which depict varying iterations of two polo players riding horses with outstretched mallets.

In this action, Plaintiff asserts three causes of action. Count I seeks cancellation of the 039 Mark for fraud on the Unites States Patent and Trade Office ("USPTO"). Count Two alleges trademark infringement without reference to a specific statute. Count Three alleges trademark dilution under the Lanham Act, 15 U.S.C. § 1125(c). *See* Amended Complaint ("Am. Compl.") [ECF No. 38].

Defendant moves to dismiss USPA's Amended Complaint in its entirety for lack of personal jurisdiction and Plaintiff's trademark dilution claim specifically for failure to adequately plead that USPA's trademarks at issue are famous—a necessary element of such claim. [ECF No. 42]. Defendant has filed a Memorandum of Law ("Mem.") in support of its motion. [ECF No.

43].  Plaintiff has filed an Opposition ("Opp'n"), [ECF No. 45], and a supporting declaration from counsel Daniel J. Barsky and accompanying exhibits, [ECF No. 44 ("Barsky Declaration" or "Barsky Decl.")].  Defendant has filed a Reply ("Reply"), ECF No. 49].[1]

For the foregoing reasons, Defendant's motion to dismiss is granted in part and denied in part.

## BACKGROUND[2]

Plaintiff "is the largest voluntary sport organization in North America for the sport of polo." Am. Compl. ¶ 1.  Plaintiff and its licensees "use Plaintiff's various trademarks in connection with its goods and services, including but not limited to" certain Design Marks (the "Design Marks") that consist of slightly different iterations of "two polo players riding horses with two mallets outstretched."  *Id.* ¶¶ 2, 15-16, 21.  In 2020, Plaintiff ranked as the fifth-largest global sports licensor and 38th largest global licensor overall with sales in over 180 countries and more than 1,100 branded retail stores worldwide.  *Id.* ¶¶ 2, 59.  Plaintiff's marks appear on goods accounting for nearly $2 billion in annual global sales.  *Id.* ¶ 59.

Plaintiff began using the first iteration of its Design Marks in 1998 in connection with watches and has been using a similar iteration with clothing beginning in 2006.  *Id.* ¶¶ 14-15.  Since 1998, Plaintiff and its licensees have been engaged in marketing and advertising goods

---

[1] In its Reply, Defendant withdraws two alternative bases for dismissal: (1) that Plaintiff's trademark infringement and dilution claims are barred by collateral estoppel; and (2) that Plaintiff's trademark dilution claims are separately barred by 15 U.S.C. § 1125(c)(6).  *See* Reply at 6.

[2]  The facts as stated herein are based on Plaintiff's allegations in the Amended Complaint, [ECF No. 32], and are accepted as true for the purpose of the pending motion.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Certain additional facts that pertain to personal jurisdiction are also drawn from declarations submitted by the parties, namely the Barsky Declaration and the declaration of Osama Alrigi, an authorized representative of Defendant. [ECF No. 30 ("Alrigi Declaration" or "Alrigi Decl.")].  The Court may rely on these declarations to the extent they pertain to the issue of personal jurisdiction.  *See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84–85 (2d Cir. 2013).

bearing one or more of the Design Marks and have operated websites displaying its Design Marks. *Id.* ¶¶ 17-19.  Plaintiff alleges that its Design Marks are "famous" and "distinctive."  *Id.* ¶¶ 59-60.

Defendant is a limited liability company organized and existing under the laws of Delaware.  *Id.* ¶ 7.  Defendant "purports – via filings with the UPSTO and a website apparently owned by Defendant – to have a principal place of business within the Southern District of New York, specifically at 17 State Street, Suite 4000, New York, New York 10004."  *Id.* ¶ 11.  To date, Defendant has not updated its filings with the USPTO to reflect a different principal place of business.  *Id.* ¶ 49.  Moreover, Defendant committed the acts complained of while it maintained its principal place of business in New York, New York.  *Id.* ¶ 7.

Defendant is the owner of the 039 Mark depicting two individuals on horses playing polo with outstretched mallets.  *Id.* ¶¶ 24, 40.  Plaintiff submitted the application for the 039 Mark to the USPTO on September 9, 2020.  *Id.* ¶ 26.  In submitting the application, Defendant affirmed that it was using the 039 Mark in commerce in the United States as of the filing date.  *Id.* ¶ 29. The application was approved and on May 18, 2021, the 039 Mark was registered on the principal register under United States Trademark Registration Number 6,353,039.  *Id.* ¶ 27.  The 039 Mark covers blazers, dresses, hats, jeans, pants, scarfs, shirts, shorts, socks, sweaters, T-shirts, jackets, and polo shirts.  *Id.* ¶ 25.

However, the application was allegedly "false" and "fraudulent" in that the 039 Mark was not in use in commerce at the time of the application "and apparently has never been in use in commerce in the United States."  *Id.* ¶ 29.  Indeed, while Defendant "purports to be a clothier operating in the United States," *id.* ¶ 3, in reality, Defendant is "a sham operation with no business activities in the United States."  *Id.* ¶¶ 4, 38.  Specifically, Defendant, through its website, "represented to the public that it operated retail locations open to the consuming public" including

3

more than five retail locations in the New York metropolitan area. *Id.* ¶¶ 7, 31. However, every store that Defendant represented it owned was, in fact, a Zara retail location. *Id.* ¶ 33. Defendant has since scrubbed its website to remove all traces of any operations in the United States and limits shipping to Bahrain, Kuwait, Oman, Qatar, the Kingdom of Saudi Arabia, and the United Arab Emirates. *Id.* ¶¶ 35-36. In sum, Plaintiff alleges that Defendant created a sham website and falsely claimed to run a business in the United States to pass itself off as a legitimate U.S. business—a prerequisite to obtain the 039 Mark. *Id.* ¶ 37. Defendant has since attempted to obtain trademark registrations in other countries based on the fraudulently obtained 039 Mark. *Id.* ¶ 38.

Defendant made its false representations to the USPTO to obtain registration for the 039 Mark while it maintained its principal place of business in New York, New York. *Id.* ¶ 49. Indeed, in the paperwork submitted to the USPTO, Defendant swore that it maintained a principal place of business in New York, New York, and the USPTO file for the 039 Mark still reflects that New York, New York is Defendant's principal place of business. *Id.* ¶ 49.

On December 13, 2023, Plaintiff filed this lawsuit against Defendant, [ECF No. 1], and thereafter filed the operative Amended Complaint. [ECF No. 38].[3] Now before the Court is Defendant's fully briefed motion to dismiss the Amended Complaint. [ECF No. 42]. In the briefing, the partis have each relied on additional materials to supplement the factual record.

In its Memorandum of Law, [ECF No. 43], Defendant relies on the sworn declaration of Osama Alrigi, an authorized representative of Defendant, which was submitted in connection with Defendant's opposition to Plaintiff's motion for default judgment. *See* Alrigi Decl. In the

---

[3] The Court notes that after Defendant failed to timely respond to the original complaint, and after Plaintiff had obtained a Clerk's Certificate of Default, [ECF Nos. 11, 13], Plaintiff filed a motion for default judgment. [ECF No. 14]. Thereafter, Defendant appeared and opposed the pending motion for default judgment. [ECF Nos. 30, 31]. In light of Defendant's appearance and desire to litigate the claims, the Court denied the motion for default judgment, [ECF No. 32], adhering to the strong preference to resolve cases on the merits. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).

declaration, Mr. Alrigi avers that Defendant "previously operated out of an office in New York located at 17 State Street, Suite 4000, New York, New York 10004, but relocated prior to the filing of this lawsuit on December 13, 2023." Alrigi Decl. ¶ 6. Defendant claims it has not conducted any business in New York since vacating that office. Alrigi Decl. ¶ 7. Defendant also asserts that Defendant currently maintains one address in the United States which is located in Delaware. Alrigi Decl. ¶ 5.

In connection with its opposition to Defendant's motion to dismiss, [ECF No. 45], Plaintiff submitted a sworn declaration from counsel Daniel J. Barsky, Esq. Barsky Decl. The declaration does not address when Defendant relocated its principal place of business. Rather, Barsky avers that Plaintiff, after filing its Amended Complaint, discovered that Defendant had created a new interactive shopping website sometime around August 18, 2024. Barsky Decl. ¶ 13. The new website permits users to order merchandise bearing the allegedly infringing 039 Mark. Barsky Decl. ¶ 13. Plaintiff's counsel successfully placed an order for goods bearing the 039 Mark to be delivered to its offices in New York, New York. Barsky Decl. ¶ 13. The receipt for the order reflects that payment must be made "with cash upon delivery." [ECF No. 44-4]. The declaration also attaches numerous exhibits which speak to the global recognition and fame of Plaintiff's Design Marks. [ECF No. 44-6].

## LEGAL STANDARD

"On a Rule 12(b)(2) motion, plaintiff carries the burden of demonstrating that personal jurisdiction exists, and where the district court did not conduct a full-blown evidentiary hearing on a motion, the plaintiff need make only a prima facie showing of jurisdiction." *Penachio v. Benedict*, 461 F. App'x 4, 5 (2d Cir. 2012) (citations omitted). "A prima facie case [of personal jurisdiction] requires non-conclusory fact-specific allegations or evidence showing that activity

that constitutes the basis of jurisdiction has taken place." *Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x. 16, 19 (2d Cir. 2015) (citing *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998)). At the pleading stage, a plaintiff may make a *prima facie* showing by relying on its pleadings and affidavits, and a showing of personal jurisdiction may be established solely by allegations. *Dorchester*, 722 F.3d at 84–85. After discovery, a plaintiff's *prima facie* showing necessary to defeat a jurisdiction testing motion "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Id.* at 85. And while the Court "construe[s] the pleadings and affidavits in the light most favorable to plaintiffs," *id.*, the Court cannot "draw argumentative inferences in the plaintiff's favor" and need not "accept as true a legal conclusion couched as a factual allegation." *O'Neill v. Asat Trust Reg.*, 714 F.3d 659, 673 (2d Cir. 2013) (citations omitted).

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The "plausibility standard" articulated in *Iqbal* "is not akin to a 'probability requirement," but it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). In reviewing a motion to dismiss, the court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). However,

6

this "tenet . . . is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

### I.    Plaintiff Has Adequately Plead General Personal Jurisdiction

Defendant argues that the Amended Complaint should be dismissed because Plaintiff has failed to establish that this Court may exercise personal jurisdiction over Defendant. Mem. at 4-6. Plaintiff responds that this Court has both general and specific personal jurisdiction over Defendant. Opp'n at 3-8. With respect to general personal jurisdiction, Defendant asserts that Plaintiff cannot establish general jurisdiction over Defendant under Section 301 of the New York Civil Practice Law and Rules ("CPLR") because Defendant has no current presence in New York and it relocated its principal place of business to Delaware prior to the filing of the lawsuit. Mem. at 5-6 (citing Alrigi Decl. ¶¶ 5-6). Plaintiff responds that this argument is nothing more than a mere denial of the allegations in the Amended Complaint and points to its own allegations that, at the time of the lawsuit, Defendant maintained its principal place of business in New York and had not updated its filings with the USPTO which reflected the same. Opp'n at 3, 5-6.

To determine whether the Court has personal jurisdiction over Defendant, the Court engages in a two-step inquiry. First, the Court looks to the law of the forum state, which, here, is New York to determine whether personal jurisdiction is proper. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013); *Spiegel v. Schulmann*, 604 F.3d 72, 76 (2d Cir. 2010). Second, the Court must determine whether the exercise of personal jurisdiction comports with due process under the U.S. Constitution. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464 (1985); *Licci*, 732 F.3d at 168.

In New York, courts exercise general jurisdiction pursuant to CPLR § 301. *See* CPLR § 301; *see also Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014).

Jurisdiction is conferred under CPLR § 301 where a company "has engaged in such a continuous and systematic course of 'doing business' [in New York] that a finding of its 'presence' [in New York] is warranted."  *Sonera*, 750 F.3d at 224 (quoting *Landoil Res. Corp. v. Alexander & Alexander Servs.*, 77 N.Y.2d 28, 33, 565 N.E.2d 488, 563 N.Y.S.2d 739 (1990)).  The Supreme Court has held that for corporate entities, including limited liability companies, "the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (cleaned up); *see also, e.g.*, *Sonera*, 750 F.3d at 225; *Arthur v. Orchestrate Bus. LLC*, No. 24-CV-02985 (MMG), 2025 WL 2201067, at *4 (S.D.N.Y. Aug. 1, 2025) ("Courts have exercised general personal jurisdiction over a limited liability company where the company has been organized under the laws of the forum state or maintains its principal place of business in the forum state."); *McLaughlin v. Onanfe Mgmt. Solutions LLC*, No. 22-CV-06792 (PKC) (MMH), 2024 WL 4184485, at *5 (E.D.N.Y. Sept. 14, 2024).  An entity can only be subject to the general personal jurisdiction in an additional forum beyond those bases if their contacts with that forum state are "so continuous and systematic as to render [it] essentially at home" in that forum state.  *See Daimler*, 571 U.S. at 138–39 & n.19 (citation omitted).

Critically, personal jurisdiction is determined at the date an action is commenced.  *See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569–70 (2d Cir. 1996) ("In general jurisdiction cases, district courts should examine a defendant's contacts with the forum state over a period that is reasonable under the circumstances—up to and including the date the suit was filed—to assess whether they satisfy the 'continuous and systematic' standard."); *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 52 (2d Cir. 1991); *Arthur*, 2025 WL 2201067, at *6 n.3 ("Personal

jurisdiction must be ascertained as of the date this action was commenced."); *Moscato v. MDM Grp., Inc.*, No. 05 CIV. 10313 (KMW), 2008 WL 2971674, at *3 (S.D.N.Y. July 31, 2008).

Here, Plaintiff has met its burden to make a *prima facie* showing that Defendant is subject to general personal jurisdiction in New York. Plaintiff alleges that at the time it filed its complaint, Defendant maintained a principal place of business in New York. Am. Compl. ¶ 11. Indeed, Plaintiff alleges that at the time it filed its complaint, the USPTO's file for the 039 Mark still reflected that Defendant's principal place of business was in New York. Am. Compl. ¶ 49. Pursuant to the USPTO Rules of Practice in Trademark Cases, an applicant or registrant, such as Defendant, "must provide and keep current the address of its domicile" with the USPTO. 37 C.F.R. § 2.189. An applicant or registrant's domicile means "the principal place of business of a juristic entity." 37 C.F.R. § 2.2(o). Thus, these allegations are sufficient to demonstrate that at the time of the lawsuit, Defendant maintained its principal place of business in New York and thus was "at home" in New York and subject to general personal jurisdiction pursuant to CPLR § 301.

Defendant principally argues this court cannot exercise general personal jurisdiction over Defendant because it relocated from its office in New York to Delaware at some unknown time prior to the lawsuit. Mem. at 5 (citing Alrigi Decl. ¶ 6). While Defendant's declaration can be considered by the Court, *see Dorchester*, 722 F.3d at 84-85, it nonetheless cannot preclude a finding of personal general jurisdiction here because it poses a factual dispute that the Court cannot resolve in the absence of an evidentiary hearing, which no party has requested. *Id.* at 86 ("[I]n the absence of an evidentiary hearing, it was error for the district court to resolve that factual dispute in [Defendant's] favor" concerning personal jurisdiction). Indeed, the Second Circuit has explicitly held that it is reversible error for a district court to resolve evidentiary disputes concerning personal jurisdiction posed by affidavits absent an evidentiary hearing. *Id.* Rather, in

9

such circumstances, a Court must solely evaluate whether Plaintiff "had, through its pleadings and affidavits, made a *prima facie* showing of personal jurisdiction 'notwithstanding any controverting presentation by'" Defendant. *Id.* (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981). While Defendant may well have relocated its principal place of business prior to the commencement of this suit, Plaintiff has sufficiently alleged and proffered evidence of the opposite, and the Court cannot resolve this factual dispute in Defendant's favor on a motion to dismiss.

Moreover, the exercise of general personal jurisdiction does not violate the due process protections of the United States Constitution. As the Supreme Court made clear in *Daimler*, subjecting a defendant to general jurisdiction in a forum where it is incorporated or has its principal place of business does not run afoul of due process. *Daimler*, 571 U.S. at 137-39; *Sonera*, 750 F.3d at 224-25 (noting that "[t]he natural result of general jurisdiction's 'at home' requirement is that" a corporate defendant, consistent with due process protections, is amenable to all claims where it is incorporated or has its principal place of business) (citation omitted).

Since the Court concludes that Plaintiff has made a *prima facie* showing of general personal jurisdiction over Defendant, the Court declines to resolve whether the Court may exercise specific personal jurisdiction over Defendant. *See* Opp'n at 6-7. Nonetheless, the Court notes that it appears there may well be specific personal jurisdiction over Defendant as well. Plaintiff contends that Defendants are subject to specific jurisdiction in New York under CPLR §§ 302(a)(1) (and 302(a)(2). Opp'n at 6.

To establish personal jurisdiction under CPLR § 302(a)(1), a plaintiff must show (1) that the defendant "transacted business within the state" and (2) that the asserted claim "arise[s] from that business activity." *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015)

(internal quotation marks omitted).  Plaintiff's showing that a single transaction occurred in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the transaction was "purposeful" and there is a "substantial nexus" between the business and the cause of action.  *Grand River Enterprises Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 (2d Cir. 2005) (citations omitted); *Eades*, 799 F.3d at 168.  Moreover, CPLR § 302(a)(2) authorizes the Court to exercise personal jurisdiction over a non-domiciliary who "commits a tortious act within the state." CPLR § 302(a)(2). This provision "reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act." *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 28 (2d Cir. 1997); *see also Thackurdeen v. Duke Univ.*, 660 F. App'x 43, 46 & n.4 (2d Cir. 2016).

Here, the gravamen of Plaintiff's Amended Complaint is that Defendant with a principal place of business in New York represented that it was a legitimate business operating, in part, out of New York, to commit fraud on the USPTO and obtain a registration for the purportedly infringing 039 Mark.  *See* Am. Compl. ¶ 3, 4, 37.  Indeed, Defendant all but concedes that it *did* have its principal place of business in New York, New York while it committed the acts complained of in the Amended Complaint and that it previously operated out of an office located in New York, New York from which it transacted business.  *See* Alrigi Decl. ¶¶ 6-7.  Moreover, Plaintiff alleges that in the allegedly fraudulent application to the USPTO, Defendant listed New York as its principal place of business and maintains that representation to this day.  Am. Compl. ¶¶ 7, 49.  Further, Defendant at least *represented* to the public that it operated retail stores in New York offering products with the allegedly infringing mark.  Am. Compl. ¶ 57.  Thus, without deciding the issue, the Court notes that based on the record it appears that Defendant may also be subject to specific jurisdiction with respect to Plaintiff's claims as they clearly have more than a

tangential relationship to Defendant's tortious acts and purposeful business activities committed while Defendant was principally operating out of, and located in, New York. *See Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 104 (2d Cir. 2006) (holding that New York long-arm nexus requirement is satisfied unless "the event giving rise to the plaintiff's injury had, at best, a tangential relationship to any contacts the defendant had with New York"); *see also Elsevier, Inc v. Grossman*, 77 F. Supp. 3d 331, 345 (S.D.N.Y. 2015 (finding personal jurisdiction proper where complaint alleged fraud committed within New York).

## II.    Plaintiff Has Not Adequately Plead Its Trademark Dilution Claim

Defendant's sole remaining argument is that Plaintiff's dilution claim under the Lanham Act, 15 U.S.C. § 1225(c), should be dismissed because Plaintiff has failed to adequately plead that its Design Marks depicting two polo players riding horses with two mallets outstretched are sufficiently famous. Mem. at 12-15. Plaintiff responds that it has sufficiently plead that its Design Marks are famous. Opp'n at 14-16.

Under Section 1225(c) of the Lanham Act, an owner of a "famous, distinct mark is entitled to an injunction against the user of a mark that is likely to cause dilution of the famous mark." *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 105 (2d Cir. 2009) (citation omitted); *Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 432-33 (2003); *E.A. Sween Co, v. A & M Deli Express Inc.*, 787 F. App'x 780, 786 (2d Cir. 2019). To withstand a motion to dismiss a Section 1225(c) Lanham Act claim for trademark dilution, a plaintiff must plead "(1) its mark is famous; (2) the defendant is making commercial use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 118 (2d Cir. 2006) (quoting *Savin Corp. v. Savin Group*, 391 F.3d 439, 448–49 (2d Cir.2004)).

At issue here is the first element: whether Plaintiff has adequately alleged that its Design Marks have the requisite degree of fame, such that they are afforded protection from dilution under the Lanham Act. *See DigitAlb, Sh.a v. Setplex, LLC*, 284 F. Supp. 3d 547, 557 (S.D.N.Y. 2018) ("Fame is the key ingredient in a trademark dilution claim.") (citation omitted). Section 1225 explains that "a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1225(c)(2)(A). The statute lists four factors to consider in assessing whether a mark meets that standard: (1) the "duration, extent, and geographic reach of advertising and publicity of the mark," (2) the "amount, volume, and geographic extent of sales of goods and services offered under the mark," (3) the "extent of actual recognition of the mark," and (4) whether "the mark was registered." 15 U.S.C. § 1225(c)(2)(A)(i)-(iv); *see also Heller Inc. v. Design Within Reach, Inc.*, No. 09-cv-1909 (JGK), 2009 WL 2486054, at *3 (S.D.N.Y. Aug. 14, 2009).

Based on Section 1225(c)'s criteria, courts have "generally limited famous marks to those that receive multi-million dollar advertising budgets, generate hundreds of millions of dollars in sales annually, and are almost universally recognized by the general public." *DigitAlb*, 284 F. Supp. 3d at 557 (quoting *Schutte Bagclosures Inc. v. Kwik Lok Corp.*, 48 F. Supp. 3d 675, 702 (S.D.N.Y. 2014). Indeed, one of the key purposes of the fame requirement is to restrict dilution claims "to those few truly famous marks like Budweiser beer, Camel cigarettes, Barbie Dolls, and the like." *Luv N. Care, Ltd. v. Regent Baby Prods. Corp.*, 841 F. Supp. 2d 753, 758 (S.D.N.Y. 2012) (citation omitted); *see also TCPIP Holding Co., Inc. v. Haar Commc'ns, Inc.*, 244 F.3d 88,

96 (2d Cir. 2001) (noting that "Dupont, Buick, or Kodak" exemplify famous marks deserving protection from dilution).[4]

However, courts in this district routinely dismiss dilution claims where a plaintiff alleges merely that a mark has attained niche fame within a specific population and not the wider general public. *See, e.g.*, *Luv N. Care*, 841 F. Supp. 2d at 757-58 (dismissing claim where plaintiff at best plead fame "among baby product consumers" and noting that "the phrase widely recognized by the general consuming public of the United States was intended to reject dilution claims based on niche fame, *i.e.*[,] fame limited to a particular channel of trade, segment of industry or service, or geographic region.") (citation omitted); *Glob. Brand Holdings, LLC v. Church & Dwight Co.*, No. 17-CV-6571 (KBF), 2017 WL 6515419, at *4 (S.D.N.Y. Dec. 19, 2017) ("[N]iche fame is not enough."); *TCPIP,* 244 F.3d at 99 ("It seems most unlikely that Congress intended to confer on marks that have enjoyed only brief fame in a small part of the country, or among a small segment of the population, the power to enjoin all other users throughout the nation in all realms of commerce.").

Whether Plaintiff's allegations are sufficient is admittedly a close call. However, the Court ultimately concludes that Plaintiff has not plausibly alleged that the Design Marks at issue are sufficiently famous.[5] Plaintiff points to the fact that it has marketed and displayed its marks on websites since 1998, has sales in over 180 countries and more than 1,100 branded retail stores worldwide, and its marks appear on goods accounting for nearly $2 billion in annual global sales.

---

[4] *TCPIP* concerned a motion for a preliminary injunction, but the Second Circuit's discussion of "fame" is nonetheless persuasive here. *TCPIP,* 244 F.3d at 89, 93.

[5] In the Barsky Declaration submitted with Plaintiff's Opposition, Plaintiff attaches numerous exhibits purportedly going to the fame of its Design Marks. *See* Barsky Decl. ¶ 16; Barsky Decl., Ex. 6 [ECF No. 44-6]. However, Plaintiff cites no authority in support of this Court's ability to consider this extraneous material and the Court declines to consider these new materials that are not included, referenced, or incorporated in Plaintiff's operative complaint. *See Bonilla v. City of New York*, No. 18 CIV. 12142 (KPF), 2019 WL 6050757, at *1 (S.D.N.Y. Nov. 15, 2019) (declining to consider declaration submitted in connection with motion to dismiss and collecting cases).

Opp'n at 14-15 (citing Am. Compl. ¶ 2, 17-18, 59).  While these numbers are incredibly significant and indicative of fame, "sales and advertising numbers alone are generally insufficient to show that a product has become sufficiently famous." *Schutte*, 48 F. Supp. 3d at 702; *TCPIP*, 244 F.3d at 99 (noting that annual sales of $280 million, tens of millions in advertising, and operating 228 retail stores in 27 states after thirty years of continuous use was insufficient to find mark famous).

Moreover, Plaintiff does not detail its advertising efforts whatsoever—*i.e.*, "how many millions, when expended, or how effectively," such that the specific Design Marks have achieved fame amongst the general public in the United States. *TCPIP*, 244 F.3d at 99.  While Plaintiff also alleges that it is the fifth-largest global sports licensor and 38th largest global licensor overall, Am. Compl. ¶ 2, these statistics simply regurgitate its sales numbers, which standing alone are insufficient to allege fame.[6]  *See SMJ Grp., Inc. v. 417 Lafayette Rest. LLC*, No. 06-cv-1774 (GEL), 2006 WL 2516519, at *4 (S.D.N.Y. Aug. 30, 2006) ("Neither continuous use of a mark nor a high volume of sales is sufficient to establish a claim for dilution.").  And most critically, the statistics alleged are not limited to the actual Design Marks at issue—*i.e.*, the two riders on horses with outstretched mallets—but encompass all goods under Plaintiff's "various trademarks." Am. Compl. ¶ 2 (noting USPA and its licensees "use various trademarks in connections with its goods and services, including but not limited to design mark that consist of a drawing of two polo players riding horses with two mallets outstretched"); *see Luv N' Care*, 841 F. Supp. 2d at 757 (noting allegation that plaintiff had generated hundreds of millions in revenue was insufficient to establish fame given it referred to goods sold generally under plaintiff's trademarks and not those sold under the marks in suit).  Further, these global sales numbers, while certainly not irrelevant, do not speak

---

[6] Plaintiff gets these statistics from an article it hyperlinks to its Amended Complaint.  *See* Am. Compl. at 2 n.1. The Court may consider this article given it is attached to the Amended Complaint.  *See Concord Assocs., L.P. v. Ent. Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016).  The linked article makes clear that the global licensor rankings are based on total retail sales.

directly to the pertinent issue of whether the Design Marks are "widely recognized by the general consuming public *of the United States*."  15 U.S.C. § 1125(c)(2)(A) (italics added); *see also Urb. Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*, No. 12-cv-3599, 2013 WL 866867, at *6 (S.D.N.Y. Mar. 8, 2013) (noting that allegations concerning "sales, advertising expenditures, or product usage in countries other than the United States" are "irrelevant to the fame analysis").

While Plaintiff's alleged global sales numbers are significant and no doubt strongly suggestive of fame, they are insufficient standing alone.  And Plaintiff fails to make any further allegations regarding its marketing and advertising efforts (beyond simply stating it engages in marketing and advertising) and recognition of the Design Marks amongst the general public in the United States.  *Cf. Adidas America, Inc. v. Thom Browne Inc.*, 599 F. Supp. 3d 151, 161 (S.D.N.Y. 2022) (finding Plaintiff adequately alleged the Adidas Three-Stripe Mark is famous as the complaint included "numerous examples of media coverage identifying the Three-Stripe Mark's global fame as well as examples of its ubiquity").

Lastly, Plaintiff points to the fact that it is the largest voluntary sport organization in North America for the sport of polo.  Opp'n at 14 (citing Am. Compl. ¶ 1).  But this allegation does not speak to whether Plaintiff's Design Marks are widely recognized by the general consuming public and would at best reflect a niche fame among polo players.  *See Heller*, 2009 WL 2486054, at *4 (dismissing dilution claim where plaintiff alleged the Bellini Chair trademark was well known to the population "interested in contemporary furniture").  Plaintiff also seemingly relies on its utterly conclusory assertion that its marks are famous.  Am. Compl. ¶ 23.  But the Court need not credit such conclusory assertions.  *See TCPIP*, 244 F.3d at 99; *Luv N' Care*, 841 F. Supp. 2d at 757; *Kenyatta v. Combs*, No. 24-cv-6923 (JGK), 2025 WL 2636610, at *5 (S.D.N.Y. Sept. 12, 2025) ("Moreover, simply asserting that a product is famous will not suffice.").

16

In short, while the Court does not "require consumer surveys or other data," the Plaintiff must nonetheless "plausibly allege wide recognition by the general consuming public" beyond referencing "high revenues." *Glob. Brand*, 2017 WL 6515419, at *5.

The Court notes however that Defendant did not raise this basis for dismissal in its pre-motion letter in connection with its anticipated motion to dismiss. [ECF No. 33]. Thus, the Court's admonishment that Plaintiff would not be granted an additional "opportunity to amend in response to any issue raised" by Defendant's pre-motion letter is inapplicable. [ECF No. 36]. Accordingly, while Defendant's motion to dismiss Plaintiff's trade dilution claim is granted, Plaintiff is granted a final opportunity to amend its complaint to add further factual allegations regarding the fame of its marks among the "general consuming public of the United States." 15 U.S.C. § 1125(c)(2)(A).

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is DENIED IN PART and GRANTED IN PART. Specifically, Defendant's motion to dismiss the entirety of the complaint for lack of personal jurisdiction is DENIED. Defendant's motion to dismiss Plaintiff's trademark dilution claim embodied in Count III is GRANTED. However, Plaintiff is granted leave to file a Second Amended Complaint adding additional factual allegations regarding the fame of the Design Marks at issue. Plaintiff shall file the Second Amended Complaint within 30 days of entry of this Order.

The Clerk of Court is respectfully requested to terminate docket entry 42.

**SO ORDERED.**

**Date:  March 4, 2026**                                      **MARY KAY VYSKOCIL**
        **New York, NY**                                       **United States District Judge**

17